1

2

3

4

5

6

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

7

8

9

MICHAEL A. ASSENBERG and
CARLA ASSENBERG, husband and
wife and the marital community
comprised thereof, and DAVID
ARMSTRONG, a single person,

NO:  2:14-CV-0145-TOR

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT

10

Plaintiffs,

11

v.

12

13

14

15

16

17

18

19

COUNTY OF WHITMAN,
WHITMAN COUNTY SHERIFF'S
DEPARTMENT, SHERIFF BRETT
MYERS, UNDERSHERIFF
RONALD ROCKNESS, DEPUTY
DON BROADFOOT, DETECTIVE
SCOTT E. PATRICK, DETECTIVE
MARK GIBBS, DETECTIVE
BRYSON AASE, QUAD CITIES
DRUG TASK FORCE, WHITMAN
COUNTY JAIL, JOHN DOE(S),
WHITMAN COUNTY BOARD OF
COMMISSIONERS, and WHITMAN
COUNTY COMMISSIONER GREG
PARTCH,

20

Defendants.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 1

BEFORE THE COURT are the following motions: Defendant Patrick's Motion for Summary Judgment (ECF No. 9); Defendants' Motion for Partial Summary Judgment Regarding 1) Failure to Produce Computation of Damages, and 2) Failure to Produce Expert Medical Testimony to Establish Injury Causation (ECF No. 13); Whitman County Defendants' Motion for Summary Judgment (ECF No. 16); and Plaintiffs' Motion to Disqualify Defense Counsel and Defense Firm (ECF No. 19). These matters were heard with oral argument on September 4, 2015. Douglas D. Phelps appeared on behalf of Plaintiff. Michael E. McFarland and Frieda K. Zimmerman appeared on behalf of the Whitman County Defendants. Kirk A. Ehlis appeared on behalf of Defendant Scott Patrick. The Court has reviewed the briefing and the record and files therein, heard from counsel, and is fully informed.

## BACKGROUND

On April 30, 2014, Plaintiffs filed their Complaint in Whitman County Superior Court against Defendants, alleging that Defendants violated 42 U.S.C. § 1983 and the Washington State Constitution when they, *inter alia*, searched Plaintiff Michael Assenberg's home with an invalid warrant, seized marijuana plants and medical marijuana authorization cards, unlawfully arrested Mr. Assenberg, and failed to give Mr. Assenberg necessary medical treatment while he

was held in Whitman County Jail.  ECF No. 1-3 at 4-17.  Defendants timely removed the case to this Court.  ECF No. 1.

In the instant motions, Defendants move for summary judgment on all claims.  ECF Nos. 9; 16.  Defendants also move to prevent Plaintiffs from presenting certain untimely-disclosed discovery and, because Plaintiffs have failed to produce any expert medical testimony to establish causation, for judgment in favor of Defendants on Mr. Assenberg's claim for personal injury damages.   ECF No. 13.  Finally, Plaintiffs move to disqualify Attorney Jeremy Zener and the firm of Evans, Craven & Lackie due to Mr. Zener's former representation of Mr. Assenberg.  ECF No. 19.

## FACTS

### A. Facts Giving Rise to Motions for Summary Judgment

The following are the undisputed material facts.  For purposes of summary judgment, "the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [in the non-moving party's opposing statement of facts]."  LR 56.1(d); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 3

undisputed.").  Because Plaintiffs have failed to file any opposing statement of

facts, the facts as claimed by Defendants are deemed admitted.

In early March 2011, a confidential informant disclosed information to the

Quad Cities Drug Task Force ("Task Force") that an individual known as Adam

was selling marijuana.  ECF Nos. 11 ¶ 9; 11-1 at 3.  The individual was described

as a white male, in his early 50s, from Colfax, Washington.  ECF Nos. 11 ¶ 9; 11-1

at 3.  The informant told the Task Force detectives that Adam was running a co-op

medical marijuana business out of his home and that the informant had purchased

marijuana and marijuana products from Adam on multiple occasions.  ECF Nos.

11 ¶ 9; 11-1 at 3.  Detective Scott Patrick recognized the name and description

provided by the informant to be Plaintiff Michael Adam Assenberg.[1]  ECF Nos. 11

¶ 9; 11-1 at 3.

During this investigation, Detective Patrick discovered a website maintained

by Mr. Assenberg, which website advertised Mr. Assenberg's business as a

dispensary for medical marijuana plants.  ECF No. 11 ¶ 11.  The website provided

forms to allow the release of medical records and information to facilitate the

distribution of marijuana.  *Id.*  The informant also provided Detective Patrick with

---

[1] In 2009, Detective Patrick investigated a tip related to Mr. Assenberg growing

over eighty marijuana plants in his residence.  ECF No. 11 ¶ 8.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 4

a medical marijuana business card he or she had received from Mr. Assenberg.  *Id.* ¶ 12.

Over the next few months, the informant assisted the Task Force with several controlled marijuana buys from Mr. Assenberg.  ECF No. 11 ¶ 13; *see* ECF Nos. 11-1; 11-2.  Prior to the first controlled buy, the informant positively identified a Department of Licensing photo of Mr. Assenberg as Adam.  ECF Nos. 11 ¶ 13; 11-1 at 3.  The controlled buys would operate as follows: the informant would call Mr. Assenberg's cell phone, Task Force detectives would follow Mr. Assenberg from his home in Colfax to the buy site, and Mr. Assenberg would sell the marijuana, edibles, and tincture.  ECF Nos. 11 ¶¶ 13-20; 11-1 at 3-5; 11-2 at 3-5.  Mr. Assenberg drove two different vehicles to the controlled buys: a Toyota Camry and a converted ambulance.  ECF No. 11 ¶¶ 14, 16.

From this investigation, Detective Patrick came to believe that Mr. Assenberg had a ready supply of marijuana, marijuana edibles, and tinctures available for sale from his residence.  *Id.* ¶ 19.  Further, based on his training and experience, Detective Patrick believed that Mr. Assenberg was manufacturing, delivering, and possessing marijuana in violation of Washington law.  *Id.* ¶ 21.

On May 3, 2011, Detective Patrick prepared an Affidavit for Search Warrant and presented this Affidavit to Whitman County Superior Court Commissioner Douglas B. Robinson.  ECF No. 11 ¶ 22; *see* ECF No. 11-3 (Affidavit for Search

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 5

Warrant).  Commissioner Robinson signed the Search Warrant for Controlled

Substances, which authorized a search of Mr. Assenberg, his residence, and his

vehicles and seizure of, *inter alia*, marijuana, marijuana paraphernalia, and papers

related to the transportation, possession, sale, or distribution of marijuana.  ECF

No. 11 ¶ 22; *see* ECF No. 11-4 (Search Warrant).

      The Task Force and the informant set up one last controlled buy.  The

informant called Mr. Assenberg, and Mr. Assenberg confirmed that he had

marijuana and edibles for sale and would be able to deliver the products later that

day.  ECF No. 11 ¶ 25.  The Task Force detectives were in place near the

Assenberg residence.  *Id.*  When Mr. Assenberg was a short distance from his

residence, he was stopped, advised that he was under arrest for delivery of a

controlled substance, taken into custody, and transported to the Whitman County

Jail.  ECF Nos. 11 ¶¶ 26-27; 18-1 at 17-18.

      When the Task Force and Detective Patrick arrived at the house, Plaintiff

Carla Assenberg, Mr. Assenberg's wife, was present at the residence.  ECF No. 11

¶ 28.  Once inside the house, the detectives found ninety-seven marijuana plants,

harvested marijuana, marijuana edibles, and marijuana paraphernalia.  *Id.* ¶¶ 33,

40.  Ms. Assenberg informed the detectives that she and her husband were both

medical marijuana patients and possessed authorizations for medical marijuana.

*Id.* ¶¶ 31, 34.  Ms. Assenberg provided Detective Patrick with her authorization.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 6

ECF No. 11-5 at 4.  Ms. Assenberg also produced two marijuana authorization cards, one of which was for Plaintiff David Armstrong.  ECF No. 11 ¶ 36.  Mr. Assenberg and Senior Deputy Prosecuting Attorney Druffel, who had arrived at the scene, determined that the Task Force should leave fifteen plants for Mrs. Assenberg—pursuant to her marijuana authorization card—and seize everything else.[2]  *Id.* ¶ 38.  Once back at the Whitman County Sheriff's Office, Detective Patrick searched Mr. Assenberg's car and found edibles and a medical marijuana authorization card in Mr. Assenberg's name.  *Id.* ¶¶ 43-44.

Mr. Assenberg arrived at the jail at approximately 2:45 p.m. on May 4.  ECF No. 18-6 at 3.  At the jail, Mr. Assenberg was taken to the booking area, searched, and placed in a holding cell.  ECF No. 18-1 at 20.  While in the holding cell, jail personnel periodically observed Mr. Assenberg in person, as well as through the ceiling camera in the cell.  ECF No. 18-6 at 3.  Sergeant Sam Keller, a Corrections Sergeant with the Whitman County Sheriff's Office, was working on the afternoon of May 4 and did not observe any injuries to Mr. Assenberg while he was in custody.  *Id.*  Further, Mr. Keller asserts that Mr. Assenberg did not request any medical attention during his stay, *id.*; indeed, Mr. Assenberg testified that he was

---

[2] The seized items were returned in February 2013; however, Plaintiffs assert that the plants were no longer viable and the marijuana, edibles, and tincture were expired.  ECF No. 1-3 at 10.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 7

not aware of any injury until he returned home and his wife noticed an injury to the back of his head, ECF No. 18-1 at 21.[3]  Mr. Assenberg left the jail shortly after 5:30 p.m. on the same day and drove himself home.  ECF Nos. 18-1 at 21; 18-6 at 3.

After his release from custody, Mr. Assenberg "expressed his intent to address his grievances at a County Commissioners meeting."  ECF No. 1-3 at 10. Commissioner Greg Partch responded to Mr. Assenberg via a handwritten letter, informing Mr. Assenberg that meetings were held for the commissioners to conduct county business, "not a forum for individuals to vent their frustrations." ECF No. 18-2 at 2.  Instead, Mr. Partch invited Mr. Assenberg to call and make an appointment with an individual commissioner.  *Id.*  Mr. Partch also welcomed Mr. Assenberg to attend any of the open public meetings but cautioned Mr. Assenberg that he would not be "recognized to speak" and any interruption would result in "appropriate action" by the Sheriff to allow the meeting to continue.  *Id.*  Mr.

---

[3] In the Complaint, Plaintiffs assert that Mr. Assenberg "apprised jail personnel at Whitman County Jail at intake that he was in pain and that he had a history of seizures."  ECF No. 1-3 at 9.  The Complaint also contends that Mr. Assenberg suffered approximately ten seizures, which resulted in his head banging against the concrete floor.  *Id.*

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 8

Assenberg contacted but never scheduled an appointment with an individual commissioner and he did not attend a public meeting.  ECF No. 18-1 at 14-15.

**B. Facts Giving Rise to Motion to Disqualify**

Mr. Assenberg retained Phelps & Associates, P.S., to represent him in the criminal matter that arose from the above events and that underlies the instant civil action.  *See* ECF No. 19-1 at 2.  Attorney Douglas Phelps filed his first notice of appearance on December 5, 2011, *id.*, and his representation continued until February 19, 2013, *id.* at 4.

During a portion of this time period—from August 2011 until June 2012—Attorney Jeremey Zener worked for Phelps & Associates.  ECF No. 19 at 3.  Mr. Zener appeared and signed at least one motion on behalf of Mr. Assenberg in the underlying criminal proceedings.  ECF No. 19-1 at 7.

On June 22, 2012, Mr. Zener began working for Evans, Craven & Lackie, which is the firm that represents Whitman County Defendants in this action.  ECF No. 28 at 2.  Two days after he started working there, Attorney Michael McFarland assigned Mr. Zener to draft a procedural summary judgment motion for this case (subsequently filed as ECF No. 13).  ECF Nos. 27 at 3; 28 at 2.  When assigned, Mr. McFarland asked Mr. Zener if he had been involved in Mr. Phelps' representation of Michael Assenberg in the instant civil action.  ECF Nos. 27 at 3; 28 at 2.  Mr. Zener claimed he did not recognize the name and, upon checking, the

attorneys noted that the Complaint was filed after Mr. Zener had left Phelps & Associates.   ECF Nos. 27 at 3; 28 at 2-3.   At this time, Mr. McFarland was either unaware or had forgotten that Phelps & Associates had represented Mr. Assenberg in the underlying criminal matter.   ECF No. 27 at 3-4.   Mr. Zener drafted the motion and has had no other involvement in this case.   *Id.* at 4.

Plaintiffs moved to disqualify Mr. Zener and his firm on July 10, 2015.   ECF No. 19.   Shortly thereafter, the defense firm took the following action: First, they immediately set up a screening procedure.   Mr. Zener is now blocked from accessing both the electronic and paper copy of the file for this case.   ECF No. 27 at 4.   Further, every attorney and staff person in the firm was made aware of Mr. Zener's conflict and his restricted access to the file.   *Id.*   Second, Mr. Zener withdrew from the case.   ECF No. 21.   Third, Mr. McFarland sent a letter to Plaintiffs' counsel acknowledging Mr. Zener's conflict and explaining the screening mechanisms employed at the firm.   ECF No. 27-1.   Mr. McFarland, Ms. Zimmerman, and Mr. Zener have all filed affidavits representing that no material information relating to Mr. Zener's former representation was transmitted to other members of the firm before implementation of the screening mechanism and notice to Plaintiffs.   ECF Nos. 26 at 2; 27 at 5; 28 at 6.

///

///

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 10

**DISCUSSION**

## I.    Motion to Disqualify

Plaintiffs have moved to disqualify both Mr. Zener and the Whitman County Defendants' firm, Evans, Craven & Lackie. ECF No. 19. Mr. Zener has since withdrawn as defense counsel. ECF No. 21. Further, the defense firm acknowledges that Washington's Rules of Professional Conduct ("RPC") prevent Mr. Zener from representing the Whitman County Defendants in this matter, absent informed consent from Mr. Assenberg. ECF No. 25 at 3-4. Thus, the only issue that remains is whether Mr. Zener's conflict is imputed to the firm.

RPC 1.9(a) prohibits a lawyer who has formerly represented a client in a matter from representing "another person in the same or substantially related matted in which that person's interests are materially adverse to the interests of the former client" absent informed, written consent from the former client. Pursuant to 1.10(a), this conflict is then imputed to the lawyer's firm: "[W]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 . . . ." "There is a presumption that attorneys who work together share secrets and confidences," which "presumption is the basis for RPC 1.10's imputed disqualification provision." *Oxford Sys., Inc. v. CellPro, Inc.*, 45 F.Supp.2d 1055, 1062 (W.D. Wash. 1999).

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 11

This rule of imputation contains an important exception:

(e)     When the prohibition on representation under paragraph (a) is based on Rule 1.9(a) or (b), and arises out of the disqualified lawyer's association with a prior firm, no other lawyer in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified unless:

  (1)     the personally disqualified lawyer is screened by effective means from participation in the matter and is apportioned no part of the fee therefrom;

  (2)     the former client of the personally disqualified lawyer receives notice of the conflict and the screening mechanism used to prohibit dissemination of information relating to the former representation;

  (3)     the firm is able to demonstrate by convincing evidence that no material information relating to the former representation was transmitted by the personally disqualified lawyer before implementation of the screening mechanism and notice to the former client.

RPC 1.10(e).  The presumption that information has been transmitted may be rebutted if the disqualified lawyer provides an affidavit to his or her former law firm and former client (1) "attesting that the personally disqualified lawyer will not participate in the matter and will not discuss the matter or the representation with any other lawyer or employee of his or her current law firm;" (2) "attesting that during the period of the lawyer's personal disqualification those lawyers or employees who do participate in the matter will be apprised that the personally disqualified lawyer is screened from participating in or discussing the matter;" and

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 12

(3) describing "the procedures being used effectively to screen the personally

disqualified lawyer." RPC 1.10(e)(3).  "[D]isqualification is 'a drastic measure

which courts should hesitate to impose except when absolutely necessary.'"

*United States v. Titan Pac. Constr. Corp.*, 637 F.Supp.1556, 1562 (W.D. Wash

1986).

        This Court finds the firm of Evans, Craven & Lackie should not be

disqualified.  Any presumption that Mr. Zener has shared material information

with the defense firm concerning Mr. Assenberg has been sufficiently rebutted.

First, the firm has implemented an effective screening procedure to prevent Mr.

Zener from participating in this matter.  Upon receipt of Plaintiffs' Motion to

Disqualify, the firm set up a screening mechanism.  Mr. Zener is barred from

access to the case file and all attorneys in the firm have been advised of the conflict

and that he is not to have access to the file.  Second, Mr. McFarland sent a letter to

Plaintiffs' firm acknowledging the conflict, noting that Mr. Zener had withdrawn

from the case, and explaining the screening mechanism implemented.  Third, the

firm has presented convincing evidence that no confidential communications were

divulged.  Mr. Zener, Ms. Zimmerman, and Mr. McFarland have filed affidavits

which convincingly establish that no material confidences or secrets were

transmitted from Mr. Zener to other attorneys in the firm before implementation of

the screening mechanism and notice to Mr. Assenberg.  Finally, Mr. Zener has

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 13

1    vehemently claimed no recollection of Mr. Assenberg, the underlying criminal

2    proceedings, or any private meetings between Mr. Zener and Mr. Assenberg.

3    Thus, besides Plaintiffs' pure speculation, there is nothing to suggest Mr. Zener

4    relayed any confidential information regarding Mr. Assenberg, let alone that he

5    recalled any information to divulge in the first place.  Accordingly, this Court

6    declines to disqualify Evans, Craven & Lackie.

7    **II.    Motions for Summary Judgment**

8         Defendants have filed three motions for summary judgment.  Defendant

9    Scott Patrick and the Whitman County Defendants have filed separate motions,

10   seeking judgment in their favor as to each claim.  ECF Nos. 9; 16.  Further the

11   Whitman County Defendants have filed a motion seeking judgment in their favor

12   as to Plaintiffs' claim for personal injury damages and to exclude untimely-

13   disclosed evidence.  ECF No. 13.

14        Summary judgment may be granted to a moving party who demonstrates

15   "that there is no genuine dispute as to any material fact and the movant is entitled

16   to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the

17   initial burden of demonstrating the absence of any genuine issues of material fact.

18   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

19   non-moving party to identify specific facts showing there is a genuine issue of

20   material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier-of-fact] could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

///

///

## A. County Departments' Capacity to be Sued

The Whitman County Defendants move to dismiss the various Whitman County departments and agencies named in this suit, asserting that they are not independent entities capable of being sued.  ECF No. 16 at 16-18.

To determine if a governmental body was intended to be a separate legal entity with the capacity to sue or be sued, courts look to the enactment providing for its establishment.  *Foothills Dev. Co. v. Clark Cnty. Bd. of Cnty. Comm'rs*, 46 Wash.App. 369, 376–77 (1986) (citing *Roth v. Drainage Improvement Dist. No. 5*, 64 Wash.2d 586, 588 (1964)).  If the enacting provision did not create a separate legal entity with capacity, then the legal action is more properly brought against the greater entity of which the governmental body is a part.  *See, e.g., Roth*, 64 Wash.2d 586) (holding that the drainage improvement district, organized by Clark County, did not have the capacity to sue or be sued apart from the County); *Leeson v. McKinney*, 92 Wash.App. 1052 (1998) (holding that Seattle Public Library is not a separate legal entity capable of being sued because neither its statutory enactment nor the Seattle Charter expressly authorizes a library to sue or be sued as a separate legal entity); *Nolan v. Snohomish Cnty.*, 59 Wash.App. 876 (1990) (holding Snohomish County Council is not a legal entity separate and apart from the county itself; thus jurisdiction over the Council was achieved by suing the County itself); *Foothills Dev. Co.*, 46 Wash.App. 369 (holding the Clark County Board of County

1  Commissioners is not a separate entity that has capacity to be sued; rather, the

2  County was the proper defendant).

3      The Revised Code of Washington helps guide the Court's analysis here.

4  RCW ch. 36.28 is the legislative enactment establishing county sheriffs.  Under

5  RCW 36.28.010, which outlines the duties, functions, and limitations of the office,

6  the county sheriff's office is charged with keeping the peace of the county.  No

7  language in this statute demonstrates that the legislature intended a county sheriff's

8  office to be a legal entity, separate and distinct from the county itself. *See Tahraoui*

9  *v. Brown*, 185 Wash.App. 1051 (2015) ("[N]othing in the statute demonstrates that

10  the legislature intended to create the Pierce County Sheriff's Department as a legal

11  entity, separate and distinct from the county itself, with the capacity to sue and be

12  sued.").

13      RCW ch. 36.32 is the legislative enactment establishing county

14  commissioners.  Pursuant to this legislation, the county commissioners "shall . . .

15  in *the name of the county* prosecute and defend all actions for and against the

16  county."  RCW 36.32.120 (6) (emphasis added); *see Foothills Dev. Co.*, 46

17  Wash.App. at 376-77 ("This section does not give the Board the authority to

18  prosecute and defend all actions in its own name. If the Legislature had intended to

19  give the Board of County Commissioners this authority, it could have included

20  such authority in this provision.").

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 17

RCW 70.48.180 is the legislative enactment permitting counties to acquire and operate their own detention facilities, and RCW ch. 10.93, along with the 2012 Inter-Local Agreement between several Idaho and Washington counties, serves as the legislative enactment for the Quad Cities Task Force.   These provisions do not expressly contemplate that either entity is separate from the county of which it is a part and thus independently capable of suing or being sued.

Conversely, RCW 36.01.010 expressly provides Washington counties the capacity to sue and be sued: "The several counties in this state shall have capacity as bodies corporate, to sue and be sued in the manner prescribed by law."

Plaintiffs fail to point to any statutory provision—let alone respond to Defendants' argument to dismiss these defendants—that expressly authorizes any of these Whitman County subparts to sue or be sued. Accordingly, Defendants Whitman County Sheriff's Department, Quad Cities Task Force, Whitman County Jail, and Whitman County Board of Commissioners are dismissed.

### B. Section 1983 Claims

Plaintiffs allege several causes of action under 42 U.S.C. § 1983[4]: unlawful search and seizure,[5] unlawful arrest, failure to provide medical care while in custody, and infringement on freedom of speech.  ECF No. 1-3 at 10-11.

---

[4] The Complaint cites the Washington State Constitution as supporting Plaintiffs' section 1983 causes of action.  ECF No. 1-3 at 10-12.  However, Plaintiffs'

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 18

A cause of action pursuant to section 1983 may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by section 1983 are "liberally and beneficently

---

response briefing clarifies that they are not alleging that state law violations give rise to section 1983 claims; their state law claims are separate. ECF No. 29 at 3-4.

[5] The Complaint also alleges that the seizure violated the Health Insurance Portability and Accountability Act ("HIPPA") regulations. ECF No. 1-3 at 11. Plaintiffs did not raise any argument in their response briefing defending this claim. *See* ECF Nos. 22; 29. At any rate, HIPPA does not create a private right of action and thus does not give rise to a section 1983 claim. *See Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007); *Huling v. City of Los Banos*, 869 F.Supp.2d 1139, 1154 (E.D. Cal. 2012) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ("[W]hether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from particular statute." (internal quotation marks omitted)). Further, Defendants are not "covered entities" under the Act. *See* 45 C.F.R. § 160.102.

1   construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y.*

2   *City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

3       Here, Defendants do not dispute that the Task Force detectives were acting

4   under the color of law, *see* ECF Nos. 9; 16; thus, the only question is whether they

5   violated Plaintiffs' constitutional rights.

6       Qualified immunity shields government actors from civil damages unless

7   their conduct violates "clearly established statutory or constitutional rights of

8   which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S.

9   223, 231 (2009). "Qualified immunity balances two important interests—the need

10  to hold public officials accountable when they exercise power irresponsibly and the

11  need to shield officials from harassment, distraction, and liability when they

12  perform their duties reasonably." *Id.*

13      In evaluating a state actor's assertion of qualified immunity, a court must

14  determine (1) whether the facts, viewed in the light most favorable to the plaintiff,

15  show that the defendant's conduct violated a constitutional right; and (2) whether

16  the right was clearly established at the time of the alleged violation such that a

17  reasonable person in the defendant's position would have understood that his

18  actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in*

19  *part by Pearson*, 555 U.S. 223. To determine whether a right is "clearly

20  established," courts consider the following:

> [The contours of the right] must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful; but it is to say that in the light of pre-existing law the
> unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).  A court

may, within its discretion, decide which of the two prongs should be addressed first

in light of the particular circumstances of the case.  *Pearson*, 555 U.S. at 236.  If

the answer to either inquiry is "no," then the defendant is entitled to qualified

immunity and may not be held personally liable for his or her conduct.  *Glenn v.*

*Wash. Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).

Because this Court finds Defendants have not violated any of Plaintiffs'

constitutional rights, this Court finds summary judgment is appropriate as to each

section 1983 claim.

### 1. Unlawful Search & Seizure

Plaintiffs assert their unlawful search and seizure claim against Defendants

Patrick, Aase, Gibbs, and Rockness, the officers who conducted the search of the

Assenberg residence and seized various marijuana items.  ECF No. 1-3 at 10-11.

The Complaint disputes the validity of the warrant only as to the search of the

Assenberg home and seizure of items therein.

The Fourth Amendment provides the following protection against unreasonable search and seizure:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990).

The Fourth Amendment protects these important interests "by requiring a neutral and detached magistrate to evaluate, before the search or seizure, the government's showing of probable cause and its particular description of the place to be searched and the items to be seized." *Id.* at 143. A search and seizure is per se unreasonable "unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Id.* at 144; *United States v. Bridges*, 344 F.3d 1010, 1016-17 (9th Cir. 2003) ("The Fourth Amendment requires search warrants to state with reasonable particularity what items are being targeted for search, or, alternatively, what criminal activity is suspected of having been perpetrated.").

Where officials have a warrant to search, the Court will uphold the validity of the search warrant so long as the Court finds "the issuing magistrate had a

substantial basis for finding probable cause." *United States v. Jennen*, 596 F.3d 594, 598 (9th Cir. 2010) (quoting *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002)).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).  The issuing judge "may rely on the training and experience of the affiant police officers." *Chavez-Miranda*, 306 F.3d at 978.

If the search warrant is for a residence, the issuing judge "must find a 'reasonable nexus' between the contraband sought and the residence." *Id.* "In making this determination, a magistrate judge need only find that it would be reasonable to seek the evidence there." *Id.* "[The Ninth Circuit has] recognized that in narcotics cases evidence is likely to be found where the dealers live." *Id.* (internal quotation marks omitted).

Defendants contend the Task Force detectives obtained a valid warrant to search the Assenberg residence and seize evidence therein and that the search was reasonable.  ECF Nos. 9 at 10-12; 16 at 5-6.  Further, Defendants maintain that

1  Washington's medical marijuana law in effect in 2011 did not negate the probable

2  cause supporting the search warrant.  ECF No. 16 at 5-7

3        Plaintiffs make several arguments in response to Defendants' motions for

4  summary judgment: the search warrant was issued improperly because the

5  detective knew or should have known that Plaintiffs possessed valid medical

6  marijuana authorizations and the magistrate was not informed of these

7  authorizations, ECF Nos. 22 at 4-5; 29 at 4-5; the marijuana plants were not

8  lawfully seized as Plaintiffs were authorized under state law to have medical

9  marijuana, ECF No. 22 at 8-9; the lack of probable cause to search is evidenced by

10  the dismissal of the criminal proceedings below, ECF Nos. 22 at 5; 29 at 4-5; even

11  if the search and seizure were reasonable as to Mr. Assenberg, there is still a

12  genuine issue of material fact as to the other two Plaintiffs in this case, ECF Nos.

13  22 at 5-6; 29 at 5; and the warrant was not sufficiently particular, ECF Nos. 22 at

14  6-7; 29 at 6-7.

15        Here, at the time of the search in question, possession and distribution of

16  marijuana was still a crime in the state of Washington.  The version of RCW

17  69.51A.040(2) in effect in May 2011[6] provided that "[i]f charged with a violation

18  ---

[6] This section was updated in 2011; however, the new version of the law did not go

19  into effect until July 2011.  S.S.S.B. 5073, 62nd Leg., 2011 Reg. Sess. (Wash.

20  2011) (effective July 22, 2011).

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 24

of state law relating to marijuana, any qualifying patient who is engaged in the

medical use of marijuana, or any designated provider who assists a qualifying

patient in the medical use of marijuana, will be deemed to have established an

affirmative defense to such charges by proof of his or her compliance with the

requirements of this chapter." *See* S.S.B. 6032, 60th Leg., 2007 Reg. Sess. (Wash.

2007) (effective July 22, 2007).  Thus, the then-applicable version of the statute

did not prevent users of medical marijuana from being arrested or charged with a

crime; an individual with a medical marijuana authorization card merely had an

affirmative defense to excuse an otherwise criminal act.  *State v. Fry*, 168 Wash.2d

1, 8, 10 (2010) (en banc) ("An affirmative defense does not per so legalize an

activity and does not negate probable cause that a crime has been committed.").[7]

Commissioner Robinson had the following information at the time he issued

the warrant: (1) Defendant Patrick, who had submitted the Affidavit for Search

Warrant for Controlled Substances, had over twenty years of law enforcement

experience and over 2,000 hours of law enforcement training; (2) a confidential

---

[7] The en banc court in *State v. Fry* discussed the version of the statute in effect

from December 3, 1998, to July 21, 2007.  *Fry*, 168 Wash.2d at 6-7 (discussing

I.M. 692, 56th Leg., 1999 Reg. Sess. (Wash. 1999) (effective Dec. 3, 1998)).  This

version of the statute contained the same affirmative defense language as the 2007

version.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 25

informant—who had previously and successfully assisted the Task Force in a

narcotics search and seizure—had provided information to Defendant Patrick

regarding Mr. Assenberg's narcotics activities; (3) Defendant Patrick had

uncovered a website where Mr. Assenberg advertised his business as a dispensary

for medical marijuana patients and obtained a business card evidencing the same;

(4) the informant assisted the Task Force in prior controlled buys, in which Mr.

Assenberg sold marijuana, edibles, and tincture to the informant; (5) Mr.

Assenberg was followed from his residence to the location of the controlled buys

by Task Force detectives; and (6) Defendant Patrick, based on his investigation and

experience, believed Mr. Assenberg had a supply of marijuana at his residence

along with other evidence of illegal narcotics activity. ECF No. 11-3. Based on

this information, the Commissioner commanded the search of the Assenberg

residence, as well as the seizure of marijuana, marijuana paraphernalia, and other

items related to illegal narcotics activity therein. ECF No. 11-4.

This Court finds the Commissioner, a neutral and detached judge, had a

substantial basis for finding probable cause to order the search of the Assenberg

residence and to order the seizure of specifically articulated, relevant evidence

therein. *See Chavez-Miranda*, 306 F.3d at 978. Based on the totality of the

information the Commissioner was provided, there was a fair probability that

contraband or evidence of a crime would be found at the Assenberg residence. *See*

*Ewing*, 588 F.3d at 1223.  There existed a reasonable nexus between the contraband and the Assenberg's residence: not only did the Task Force detectives follow Mr. Assenberg from his home to the controlled buys but, as a suspected narcotics dealer, it was likely that Mr. Assenberg had contraband at his residence. *See Chavez-Miranda*, 306 F.3d at 978.  And, in issuing the warrant, the Commissioner could rightfully rely on Defendant Patrick's over 20 years of law enforcement training and experience when making this determination. *See id.*

This Court finds Plaintiff's arguments to the contrary unconvincing.

First, despite Plaintiffs' unsupported assertion,[8] there is no requirement that Defendant Patrick had to include Plaintiffs' medical authorization cards, even if he knew that they existed,[9] in his Affidavit for Search Warrant.  Rather, any affirmative defense the medical marijuana authorization cards offered did not negate the probable cause that existed.  *Fry*, 168 Wash.2d at 10.  And, relatedly, the Task Force detectives were *ordered*, pursuant to the lawful warrant, to seize all

[8] Plaintiffs cite only to *Allen v. Kumagai*, 356 Fed. App'x 8, 9 (9th Cir. 2009); however, this unpublished opinion concerns California law and is thus inapplicable to these proceedings regarding application of Washington law.

[9] Plaintiffs failed to present any evidence, either in their briefing or at the hearing, that Defendant Patrick had personal knowledge of Plaintiffs' medical marijuana authorization cards.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 27

marijuana and related marijuana items—a search warrant, rather than being optional as the Plaintiffs so characterize, is a directive by the court and thus the officers were required to comply with its provisions.  Based on their own policy and consultation with the prosecutor, the officers left fifteen plants in light of Ms. Assenberg's medical marijuana authorization card.[10]

Second, *at the time he issued the warrant*, the Commissioner had sufficient information to justify issuance of a search warrant.  *See Withrow v. Larkin*, 421 U.S. 35, 57 (1975) ("[T]here is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding . . . .").  Any reason for dismissing the charges that later arose is irrelevant to the probable cause determination.

---

[10] Despite Plaintiffs unwavering argument at the hearing that the officers were required to leave fifteen plants for each Plaintiff, the Washington law in effect at the time does not support such a claim.  The law in effect at the time merely permitted a qualifying patient to "[p]ossess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply," RCW 69.51A.040(3)(b)(2007); this language, did not prevent officers from seizing marijuana as evidence of a crime and pursuant to a directive to do so in a lawful warrant.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 28

Third, the warrant was sufficiently particular: the warrant specifically articulated what items the Task Force were searching for, providing the detectives proper guidance as to what items they could lawfully seize.  *See Bridges*, 344 F.3d at 1016.

Finally, regarding Plaintiffs' argument that Mr. Armstrong's and Ms. Assenberg's Fourth Amendment privacy rights were violated, these claims have no merit.  Mr. Armstrong has no claim as he has failed to demonstrate a reasonable expectation of privacy within the Assenberg home.  *See United States v. Paopao*, 469 F.3d 760, 764 (9th Cir. 2006).  As to Ms. Assenberg, the warrant covered search of the Assenberg residence and seizure of certain contraband and evidence of a crime contained therein; the warrant did not need to name her to be valid.  *See United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) ("A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence.").

Because the search of the Assenberg home and seizure of contraband therein was lawful and did not violate Plaintiffs' constitutional rights, the officers are entitled to qualified immunity under the first prong of the *Saucier* qualified immunity analysis.

1    And, even if Plaintiff were able to demonstrate that the Task Force violated

2    their Fourth Amendment rights, they have wholly failed to show that a reasonable

3    officer in the shoes of any of the Task Force detectives *would have known* that his

4    actions violated any clearly established right. *See Hope*, 536 U.S. at 739. As

5    Plaintiffs' own oral argument demonstrated, the rights of medical marijuana

6    patients under Washington law were *subsequently* clarified by later versions of the

7    statute and case law. At the time of the events in question, it would have been far

8    from apparent to any reasonable officer that searching the Assenberg home and

9    seizing items therein under the directive of a valid warrant violated any person's

10   constitutional rights. Accordingly, Defendants are entitled to summary judgment

11   on this claim.

12       **2. Unlawful Arrest**

13   Plaintiffs assert their unlawful arrest claims against Defendant Broadfoot

14   and Patrick, the arresting officers. ECF No. 1-3 at 8, 11.

15   As an initial matter, the Court construes this claim as one made pursuant to

16   the Fourth Amendment. The Complaint asserts that Mr. Assenberg's arrest, which

17   was not pursuant to a valid search warrant, was contrary to the Fifth and

18   Fourteenth Amendments. *Id.* at 11. However, it is the Fourth Amendment—

19   applicable to the states through the Fourteenth Amendment—that protects

20   individuals against unlawful seizure of their person. *See Dubner v. City & Cnty. of*

1   *S.F.*, 266 F.3d 959, 964-65 (9th Cir. 2001) ("A claim for unlawful arrest is

2   cognizable under § 1983 as a violation of the Fourth Amendment, provided the

3   arrest was without probable cause or other justification.").  Based on the

4   information presented by the parties, it does not appear that the Task Force had a

5   warrant for Mr. Assenberg's arrest.  Plaintiffs provide no argument in their

6   response briefing to defend the validity of this claim under the Fifth Amendment.

7       "It is well established that 'an arrest without probable cause violates the

8   Fourth Amendment and gives rise to a claim for damages under § 1983.'"

9   *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting

10  *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)); *see also  Dubner*, 266

11  F.3d at 964-65.   An officer has probable cause to make a warrantless arrest when

12  the facts and circumstances within his knowledge are sufficient for a reasonably

13  prudent person to believe that there is a fair probability the defendant has

14  committed a crime.  *Rosenbaum*, 663 F.3d at 1076; *Tatum v. City & Cnty. of S.F.*,

15  441 F.3d 1090, 1094 (9th Cir. 2006).  The probable cause analysis looks to the

16  facts known to the officer at the time of the arrest and the criminal statute to which

17  those facts apply.   *Rosenbaum*, 663 F.3d at 1076.

18      At the time of Mr. Assenberg's arrest, the Task Force had the following

19  information: (1) Mr. Assenberg had participated in prior controlled buys; (2) on

20  each occasion, the informant would call Mr. Assenberg's cell phone, Mr.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 31

Assenberg would drive from his residence to the buy location—as observed by surveilling Task Force detectives—and the informant would buy marijuana, edibles, and tincture from Mr. Assenberg; (3) on May 4, 2011, the informant contacted Mr. Assenberg to arrange another controlled buy of marijuana; (4) Mr. Assenberg confirmed that he had marijuana and edibles available for sale and would be able to deliver the products within several hours; and (5) Task Force detectives, who were conducting surveillance of the Assenberg residence, observed Mr. Assenberg exiting his residence and getting into one of two vehicles he had previously used for delivery.

At the time of the arrest, it was illegal in the State of Washington "for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."  RCW 69.50.401(1) (2005) (effective until December 6, 2012).  Delivery of marijuana—a Schedule I controlled substance at the time, RCW 69.50.204(c)(22) (2010)[11]—was a class C felony, RCW 69.50.401(2)(c) (2005).

This Court finds no issue of genuine dispute that the Task Force detectives had probable cause to arrest Mr. Assenberg for the prior deliveries of marijuana. Based on the past controlled buys, there existed a fair probability that Mr.

_____

[11] This section has recently been amended by S.S.S.H.B. 2136, 64th Leg., 2015 2nd Spec. Sess. (Wash. 2015) (effective July 1, 2015).

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 32

Assenberg was, once again, delivering marijuana from his residence to the location of the controlled buy.  *See Tatum*, 441 F.3d at 1094.  Accordingly, this Court finds summary judgment on this claim is appropriate.

### 3.  Lack of Medical Care

Plaintiffs generally assert that Whitman County Jail personnel failed to provide necessary medical treatment while Mr. Assenberg was in custody; Plaintiffs name no individual defendants.  ECF No. 1-3 at 11.  Although the Complaint lists John Doe(s), employed by Whitman County Jail, Plaintiffs did not identify these unnamed defendants by November 17, 2014, as required by this Court's Scheduling Order.  ECF No. 8 at 2.

Assuming Plaintiffs had alleged this claim against specific defendants, the next issue is under which constitutional amendment this claim arises.  The Complaint alleges that Mr. Assenberg was not given prompt medical attention in violation of the Eighth Amendment.  ECF No. 1-3 at 11.  However, the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to a pretrial detainee's claim that detention officials failed to provide medical treatment.  *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010).  At any rate, the same standard applies under both amendments.  *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017

(9th Cir. 2010).  Plaintiffs' response briefing concedes that their claim arises under the Fourteenth Amendment.  ECF No. 29 at 8.

The Fourteenth Amendment protects the right of pretrial detainees to receive adequate medical care while in custody.  *Clouthier*, 591 F.3d at 1242.  The due process clause imposes a "deliberate indifference" standard to claims that correction facility officials failed to address the medical needs of pretrial detainees.  *Id.*  Under this standard, "[a] prison official cannot be liable for deliberate indifference unless he or she knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Simmons*, 609 F.3d at 1017 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "In order words, a plaintiff must show that the official was (a) subjectively aware of the serious medical need and (b) failed adequately to respond."  *Id.* (quoting internal quotation marks and emphasis omitted).

Plaintiffs assert that Mr. Assenberg was in custody in a cell under the oversight of Whitman County Jail personnel, that he suffered a seizure and a resulting injury to his head, and that nothing was done to prevent his injury or otherwise provide treatment.  ECF No. 29 at 8.  In support, Plaintiffs cite to their response to Defendants' interrogatory asking Plaintiffs to detail the basis for the allegation of lack of medical care:

> When I was taken to the jail and booked in, I informed the staff that I was really suffering and I could go into a grand mal seizure. The holding cell has a camera and the staff just sat back and watched and did nothing while I cracked my head open enough to make it bleed.

ECF No. 30-1 at 2.   Plaintiffs also attached a photograph of the alleged injury.  *Id.* at 3.

This Court finds summary judgment as to this claim is appropriate.  First, Plaintiffs have not alleged which named Defendants, if any, participated in the alleged deprivation of Mr. Assenberg's constitutional rights.  Second, Plaintiffs have presented no evidence that Mr. Assenberg had a serious medical condition that needed treatment.  This Court has seen no medical records corroborating injuries sustained while in the jail.  Third, Plaintiffs have presented no evidence to establish that the jail personnel were subjectively aware of Mr. Assenberg's medical needs while he was in custody.  Indeed, Mr. Assenberg testified that he was not even aware of his alleged injury until he had returned home—after having driven himself—and his wife noticed the injury.  ECF No. 18-1 ("Q: When you were removed from the holding cell on May 4th, 2011, did you make any indication to any of the officers that you had injured your head? A: I did not know my head was even injured until after I had gotten home and my wife had noticed what was going on with the back of my head.").  Accordingly, because Plaintiffs have failed to name the specific defendants responsible for this alleged

constitutional violation and have failed to present any evidence that jail personnel

were deliberately indifferent to Mr. Assenberg's medical needs, summary

judgment is appropriate as to this claim.

### 4. Infringement on Speech

Plaintiffs assert their First Amendment claim again Defendant Partch, the

commissioner who informed Mr. Assenberg that he would not be permitted to

speak at the commissioners' meeting.  ECF No. 1-3 at 10-11.

"[T]he 'First Amendment does not guarantee access to property simply

because it is owned or controlled by the government.' "  *Wright v. Incline Vill.*

*Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (quoting *Perry Educ.*

*Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).  "The government

may limit the use of properties under its control to the uses to which the properties

are lawfully dedicated."  *Id.*  "The extent to which the government may limit

access to its properties depends on the nature of the relevant forum."  *Id.*

"Government property is characterized as: (1) a traditional public forum, (2) a

designated public forum, (3) a limited public forum, or (4) a nonpublic forum."  *Id.*

(internal citation omitted).  With traditional and designated public forums, the

Court looks to whether the restriction on speech is a valid time, place, and manner

restriction on speech.  *Id.*  "[P]ublic places historically associated with the free

exercise of expressive activities . . . are considered . . . to be public forums."

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 36

1    *United States v. Grace*, 461 U.S. 171, 177 (1983).  "[T]he government may enforce

2    reasonable time, place, and manner restrictions as long as the restrictions are

3    content-neutral, are narrowly tailored to serve a significant government interest,

4    and leave open ample alternative channels of communication."  *Portland Feminist*

5    *Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 686 (9th Cir. 1988)

6    (quoting *United States v. Grace*, 461 U.S. 171, 177 (1983)).

7         The Whitman County Defendants assert that Plaintiffs cannot establish a

8    First Amendment claim because Mr. Assenberg was never prevented from

9    presenting his grievances at a public meeting.  ECF No. 16 at 13.  Defendants

10   further assert that, if Plaintiffs are asserting a prior restraint claim, the letter sent by

11   Commissioner Patch did not unconstitutionally restrict Mr. Assenberg's speech.

12   ECF No. 33 at 7-8.

13        In response, Plaintiffs contend—without any citation to controlling law or

14   any factual support—that Mr. Assenberg's speech was unconstitutionally chilled

15   by Commissioner Partch's letter.  ECF No. 29 at 8-9.

16        Even assuming the building where the Whitman County Board of

17   Commissioners meets is a public forum, Commissioner Partch did not violate Mr.

18   Assenberg's First Amendment rights.  First, it is doubtful that Defendant Partch's

19   letter can even be characterized as a governmental restriction on speech.

20   Commissioner Partch's letter simply expressed that Mr. Assenberg would not be

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 37

permitted to disrupt the commissioners' meeting, held to conduct county business. Instead, Commissioner Partch *invited* Mr. Assenberg to reach out to an individual commissioner to make his grievances known and attend any meeting open to the public.  Second, even assuming the letter constitutes a governmental restriction on speech, such a restriction is narrowly-tailored to serve an important governmental interest—that is, conducting meetings without interruption and with order. Moreover, Commissioner Partch suggested an adequate alternative channel of communication for Mr. Assenberg to vent his frustrations: Mr. Assenberg could have called an individual commissioner and scheduled an appointment.  Mr. Assenberg was also invited to attend any meeting that is open to the public.  Based on the undisputed facts, Mr. Assenberg neither attended the public meeting nor scheduled an individual meeting with a commissioner to express his grievances. Without further factual background, this Court finds Plaintiffs have failed to present a genuine issue of material fact as to this claim.

And, even if Plaintiffs were able to demonstrate that Mr. Partch violated Mr. Assenberg's First Amendment rights, they have wholly failed to show that a reasonable official in the shoes of Commissioner Partch *would have known* that his actions violated any clearly established right.  *See Hope*, 536 U.S. at 739. Commissioner Partch's letter merely communicated the government's interest in conducting orderly business meetings, without interruption, and reasonably offered

an alternative outlet for Mr. Assenberg to express his frustrations.  No reasonable official would have known this communication violated Mr. Assenberg's clearly established First Amendment rights.  Accordingly, because Commissioner Partch is entitled to qualified immunity, summary judgment as to this claim is appropriate.

### 5.  Municipal Liability

Plaintiffs alleged all of the above violations against Whitman County and several of its departments and agencies.

Plaintiffs' Complaint incorrectly states that the County and its subparts should be liable under theories of agency law and respondent superior.  *See Monell*, 436 U.S. at 692 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").  However, this Court construes Plaintiffs claim as one for municipal liability.

The Supreme Court has held that local governments are "persons" who may be subject to suits under § 1983.  *Id.* at 690.  However, a municipality may only be held liable for constitutional violations resulting from actions undertaken pursuant to an "official municipal policy."  *Id.* at 691.  As the Supreme Court articulated in *Monell*, the purpose of the "official municipal policy" requirement is to prevent municipalities from being held vicariously liable for unconstitutional acts of their employees under the doctrine of respondeat superior.  *Id.*; *see also Bd. of Cnty. Comm'rs  v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475

U.S. 469, 478-79 (1986).  Thus, the "official municipal policy" requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur*, 475 U.S. at 479-80 (footnote omitted).

The Ninth Circuit recognizes four categories of "official municipal policy" sufficient to establish municipal liability under *Monell*: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) failure to adequately train employees with deliberate indifference to the consequences.  *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999).  A plaintiff must also establish the requisite causal link between this "policy" and the alleged constitutional deprivation.  *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).  The Supreme Court articulated the causation requirement as follows:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct casual link between the municipal action and the deprivation of federal rights.

1  *Brown*, 520 U.S. at 404.  "Where a plaintiff claims that the municipality has not

2  directly inflicted an injury, but nonetheless has caused an employee to do so,

3  rigorous standards of culpability and causation must be applied to ensure that the

4  municipality is not held liable solely for the actions of its employees." *Id.* at 405.

5        Even assuming the Task Force detectives violated Plaintiff's constitutional

6  rights, Plaintiffs have presented no evidence to establish municipal liability under

7  any of the theories listed above.  The Complaint merely states that Whitman

8  County and its subparts should be liable for the actions of their employees and

9  agents, ECF No. 1-3 at 12-13, but provides no support to demonstrate that

10  Whitman County was the "moving force" behind any alleged constitutional

11  violation, *Brown*, 520 U.S. at 404.  Plaintiffs' response briefing provides no

12  argument in defense of their claim.  Accordingly, summary judgment as to this

13  claim is appropriate.

14  **C. State Law Claims**

15        Plaintiffs' allege several claims pursuant to the Washington State

16  Constitution.

17        The Whitman County Defendants assert that these claims necessarily fail as

18  the Washington State Constitution does not provide a private right of action for the

19  claims asserted.  ECF No. 16 at 20-21.  Defendant Patrick asserts that even if

20

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 41

Plaintiffs were able to demonstrate violation of any of the cited constitutional provisions, he is immune from suit.  ECF No. 9 at 15-17.

Plaintiffs' response briefing discusses their privacy rights claim under article I, section 7 of the Washington State Constitution, asserting without explanation that Defendants violated this provision when the Task Force detectives searched the Assenberg home and seized items therein.  ECF Nos. 22 at 10; 29 at 10. Plaintiffs' briefing ignores all other claims or conclusively asserts that they were violated.

To the extent Plaintiffs seek monetary damages for the alleged violations of the Washington Constitution, "Washington courts have consistently rejected invitations to establish a cause of action for damages upon constitutional violations without the aid of augmentative legislation."  *Blinka v. Wash. State Bar Ass'n*, 109 Wash.App. 575, 591 (2001) (holding that article I, section 5 does not provide a private right of action); *see also Reid v. Pierce Cnty.*, 136 Wash.2d 195 (1998) (en banc) (declining plaintiff's invitation to create a private right of action for damages under article I, section 7 of the Washington Constitution); *Youker v. Douglas Cnty.*, 178 Wash.App. 793, 797 (2014) ("[O]ur Supreme Court has refused to create a constitutional cause of action for governmental privacy invasions . . . Likewise, we decline to do so here."); *Sys. Amusement, Inc. v. State*, 7 Wash.App. 516, 518 (1972) (holding that article I, section 3 does not create a cause of action

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 42

for money damages). Because Plaintiffs have provided no authority providing a private right of action to their state constitutional claims, they are not entitled to any monetary relief as to these claims.

To the extent Plaintiffs seek injunctive relief for the alleged violations of the Washington Constitution, Plaintiffs have failed to demonstrate the right to such equitable relief. The right to injunctive relief requires a showing by the party seeking relief that he or she has (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of either are resulting or will result in actual and substantial injury to the relief-seeking party. *Tyler Pipe Indus., Inc. v. State Dep't of Revenue*, 96 Wash.2d 785, 792 (1982) (en banc); *Chan v. City of Seattle*, 164 Wash.App. 549, 567 (2011). Because Plaintiffs have only complained of past injuries, Plaintiffs do not have a valid claim for equitable relief.

///

**IT IS HEREBY ORDERED:**

1. Defendant Patrick's Motion for Summary Judgment (ECF No. 9) is **GRANTED**.

2. Whitman County Defendants' Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

3. Defendants' Motion for Partial Summary Judgment Regarding 1) Failure

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 43

1    to Produce Computation of Damages, and 2) Failure to Produce Expert Medical

2    Testimony to Establish Injury Causation (ECF No. 13) is **DENIED** as moot.

3        4.  Motion to Disqualify Defense Counsel and Defense Firm (ECF No. 19) is

4    **DENIED**.

5        The District Court Executive is hereby directed to enter this Order, provide

6    copies to counsel, enter **JUDGMENT** for Defendants, and **CLOSE** the file.

7        **DATED** September 4, 2015.

8

9



THOMAS O. RICE
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 44